[Civ. No. 39365. Second Dist., Div. Four. Dec. 17, 1971.]

FREDERICK A. GAGE, Plaintiff and Appellant, v.
JAMES S. ALLISON, as Registrar, etc., Defendant and Respondent.

## Counsel

R. Richard Fusilier for Plaintiff and Appellant.

John D. Maharg, County Counsel, Edward H. Gaylord and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.

## Opinion

**KINGSLEY, J.**—This is an appeal from a declaratory judgment in favor of defendant Allison.[1] For the reasons set forth below, we affirm the judgment.

The issue in the case is the right of plaintiff to become a candidate at an election to be held in June 1972, for the office of supervisor of Los Angeles

---

[1]There is no such office or officer as the "Registrar of Voters" in the County of Los Angeles. Mr. Allison's official title is "Registrar-Recorder." He answered and moved for judgment in that capacity. The defect in designation is not fatal.

County from the Fifth Supervisorial District. The trial court determined that he was not so entitled; we agree.

For 17 years, plaintiff has resided at 10612 Kester Avenue, in the City of Los Angeles, County of Los Angeles. Prior to August 27, 1971, that residence was within the boundaries of the said Fifth District, and plaintiff was an unsuccessful candidate for supervisor from that district at the last election held therein. On August 27, 1971, Los Angeles County Ordinance No. 10322 became effective. That ordinance, adopted pursuant to the legal requirement for periodic redistricting of supervisorial districts, changed the boundaries of the Fifth District in such a manner as to place plaintiff's residence approximately one-tenth of a mile outside the Fifth District as re-defined and within the Third Supervisorial District.

Section 4 of article II of the Los Angeles County Charter provides, in pertinent part: "The County of Los Angeles shall have a Board of Supervisors consisting of five members, each of whom must be an elector of the district which he represents, must reside therein during his incumbency, must have been such elector for at least one year immediately preceding his election, and shall be elected by such district. . . ."

We regard the opinion in *Lindsey* v. *Dominguez* (1933) 217 Cal. 533 [20 P.2d 327], as settling, at least so far as this court is concerned, that a residency requirement for public office is valid. If later cases, in other fields, applying the so-called "compelling state interest" and "fundamental right" theories, require a different rule, it is the exclusive province of a higher court so to determine.

Plaintiff relies on *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716 [94 Cal. Rptr. 602, 484 P.2d 578]. But that case assumed the validity of a residence requirement; it held only that a requirement of a five-year residency was longer than any reasonable public policy required. We point out that, under *Lindsey,* plaintiff would be entitled to be a candidate for election in the Third District (in which he now resides), since he could count his residence at his present home toward the one-year requirement. While it may not be impossible that the county charter permits a person to be concurrently eligible to run for supervisor in two districts,[2] we regard that as sufficiently unlikely that we would expect a more specific provision to that effect before we would so hold.

Plaintiff's complaint, and his opening brief here, discussed only the question of his right to file for supervisor in the newly defined Fifth District

---

[2]Since we are concerned with eligibility, it is immaterial that no election is currently projected for 1972 in the Third District.

while continuing to keep his residence at his present home. In his closing brief, he raises an additional issue, involving his rights if he should hereafter change his residence to a place within the present Fifth District. As the county counsel points out, that issue was not before the trial court, and, therefore, is not properly before us on an appeal. However, since the matter is one of public interest, and one which plaintiff could raise in the trial court,[3] we undertake to comment thereon.

Plaintiff relies on a statement in his declaration filed in the court below in connection with the motion for judgment, that he would move into the present Fifth District if elected. We do not regard that promise as increasing his rights. We know of no procedure by which he could be compelled to carry out that promise if, after filing, running and being elected, he should change his mind. The result then, since as we hold above a residency requirement is valid, would be to create an immediate vacancy. The law does not contemplate that possibility.

Since there is a third possibility—namely that plaintiff might hereafter elect to move into the present Fifth District prior to filing—we comment thereon.[4] Plaintiff's theory is that *Zeilenga* invalidates any requirement that residency be for any prescribed period of time. As we point out above, *Zeilenga* does not so hold. To say that there is no compelling public interest in a five-year requirement is not to say that a one-year period is not a reasonable device to insure a reasonable relation between a public officer and his constituency. We are not prepared, at our judicial level, to extend *Zeilenga* beyond its immediate facts.

Plaintiff relies on section 25002 of the Government Code, which reads as follows: "The term of office of any supervisor who has been elected and whose term of office has not expired shall not be affected by any change in the boundaries of the district from which he was elected.

"At the first election for county supervisors in each county following adjustment of the boundaries of supervisorial districts, a supervisor shall be elected for each district under the readjusted district plan that has the same district number as a district whose incumbent's term is due to expire.

"A change in the boundaries of a supervisorial district shall not be

---

[3]The procedure adopted in the trial court gave plaintiff no opportunity to amend. Since his declaration below referred to indicated the possibility of some amendment, plaintiff could argue that he was entitled to a reversal for that purpose. Since we are prepared to answer the issue here, no purpose would be served by that circumlocution.

[4]It is obvious that, whether the "election" herein involved is the June primary or the November general election, plaintiff cannot now achieve a one-year residence by a removal prior to filing.

made within 90 days prior to the final date of voter registration for an election of supervisors in the county or between the direct primary election and the general election."

If we understand plaintiff's argument, it is that a provision which permits a supervisor, made a nonresident by redistricting, to remain in office until his chronological term expires, indicates that the policy of "residency" is not absolute and, therefore, that it is unreasonable to have a nonresident incumbent and not permit a nonresident candidate. We need not consider the validity of that argument, since section 25002 does not apply to a chartered county such as Los Angeles. (Cal. Const., art. XI, § 4, subd. (g); (1950) 31 Ops. Cal. Atty. Gen., 88, 92.) Under the provisions of section 7, of article II of the Los Angeles County Charter,[5] the situation envisaged by the first paragraph of section 25002 could never arise in Los Angeles County. Whatever argument might be based on section 25002 in case of an election in a nonchartered county, the section has no effect on the case at bench. The public policy with reference to residency of candidates and officeholders, so far as Los Angeles is concerned, is that expressed in its charter. As we have indicated, that policy operates to make plaintiff eligible for candidacy, in 1972, only in the Third and not in the Fifth Supervisorial District.

Although the judgment below does not answer all of the questions which plaintiff could legitimately raise, this opinion does so. Under the circumstances, there is no reason to remand the case merely to have a trial court adopt our conclusions. The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1972.

---

[5]"The Board of Supervisors may, by a two-thirds vote of its members, change boundaries of any supervisorial district. No such boundaries shall ever be so changed as to affect the incumbency in office of any supervisor. Any change in the boundaries of any supervisorial district must be made within one year after a general election."